**NORTHERN INSURANCE COMPANY OF NEW YORK, Plaintiff,**

v.

**Carl OLMSTEAD, Defendant.**

**No. 3:02 CV 7564.**

United States District Court, N.D. Ohio, Western Division.

Jan. 13, 2003.

---

Ricardo J. Cardenas, Roetzel & Andress, Ricardo J. Cardenas, Roetzel & Andress, Akron, OH, for Plaintiff.

Kevin J. Boissoneault, Gallon & Takacs, Toledo, OH, for Defendant.

## MEMORANDUM OPINION

KATZ, District Judge.

Pending before this Court is Defendant's Motion to Dismiss and/or Motion to Stay Proceedings (Doc. No. 3). For the following reasons, the Court will deny Defendant's motion.

### I. BACKGROUND

In April 2001 Defendant Carl Olmstead was involved in an automobile accident in which he was struck by another vehicle. At the time of the accident, Olmstead was employed by Sauder Woodwork-

ing Company ("Sauder"), which maintained a commercial auto and general liability ("CGL") insurance policy issued by Plaintiff Northern Insurance of New York ("Northern"). Defendant's personal insurance, as well as the tortfeasor's policy, allegedly have paid their policy limits. Though purportedly occupying his own vehicle and not acting within the scope of his employment at the time of the accident, Olmstead now seeks to recover from Northern in a *Scott–Pontzer*[1] action.

Plaintiff has commenced this action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, seeking a declaration that it is not liable to Defendant for uninsured/underinsured motorist ("UM/UIM") coverage under Sauder's policy. Shortly after the instant action was filed, Defendant filed his own declaratory judgment action in the Ohio Fulton County Court of Common Pleas. Pursuant to Federal Rules of Civil Procedure 12(b)(1) and (3), Defendant has filed a motion to dismiss and/or stay the instant declaratory judgment action.

## II. DISCUSSION

### A. "Direct Action" Proviso of 28 U.S.C. § 1332(c)(1)

The parties in the instant action ask this Court to once again consider whether a case predicated upon *Scott–Pontzer* falls within the ambit of the "direct action" proviso of 28 U.S.C. § 1332(c)(1), which provides in relevant part:

[I]n any direct action against the insurer of a policy or contract of liability insurance, ... to which action the insured is not joined as a party-defendant, such

insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business.

The parties have provided numerous reasons why this action should or should not be characterized as a § 1332(c)(1) "direct action." The parties' arguments go largely to disputes over the definition of various terms within the proviso. These arguments have been addressed by this Court in numerous prior decisions. It is sufficient in the instant action to note that the Sixth Circuit has not restricted "direct action" cases to recovery only from a tortfeasor's insurance company. The Circuit clearly has given a more expansive reading to § 1332(c)(1), as more fully elaborated upon by this Court in *Butler v. Zurich Am. Ins. Co.*, 184 F.Supp.2d 695 (N.D.Ohio 2002), *Griffin v. Wausau Ins. Cos.*, 189 F.Supp.2d 714 (N.D.Ohio 2002), and *Northrup v. Liberty Mut. Group*, No. 02–7049 (N.D.Ohio July 8, 2002). Moreover, in *Butler*, *Griffin*, and *Northrup*, this Court also determined that Ohio UM/UIM coverage afforded under *Scott–Pontzer* and its progeny constitutes "liability insurance" for § 1332(c)(1) purposes. *See also Elom v. Fidelity & Guaranty*, 208 F.Supp.2d 867, 870 (N.D.Ohio 2002).

■ The more relevant and dispositive jurisdictional question not addressed by either party is whether a declaratory judgment action commenced *by* an insurer, as opposed to *against* an insurer, falls within the ambit of the direct action proviso. Had the instant action been filed *against*

---

1. *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.*, 85 Ohio St.3d 660, 710 N.E.2d 1116 (1999). *Scott–Pontzer* stands for the proposition that an employee may recover under the UM/UIM coverage of his employer's commercial automobile liability policy, even though the employee was not acting in the scope of employ-

ment at the time of his accident. In *Ezawa v. Yasuda Fire & Marine Ins. Co.*, 86 Ohio St.3d 557, 715 N.E.2d 1142 (1999), the Ohio Supreme Court, without comment, extended *Scott–Pontzer* to include coverage of a child of an employee of an insured corporation.

Northern, Ohio citizenship would be imputed to Northern, thus destroying this Court's diversity jurisdiction.[2] However, in *Northbrook Nat'l Ins. Co. v. Brewer*, 493 U.S. 6, 110 S.Ct. 297, 107 L.Ed.2d 223 (1989), the Supreme Court determined that an action *by* an insurer does not implicate § 1332(c) (acknowledging the "somewhat anomalous" result of retaining jurisdiction over actions commenced by an out-of-state insurer yet prohibiting their removal if initiated by an insured, but nonetheless holding that this "seeming incongruity" is insufficient to expand "the scope of Congress' precise wording in § 1332(c)"). Ten years prior to *Northbrook*, the Sixth Circuit had already determined that § 1332(c) does not apply to actions commenced *by* an insurer. *See Aetna Casualty & Surety Ins. Co. v. Greene*, 606 F.2d 123 (6th Cir.1979) (reversing district court's determination that § 1332(c) applies to a declaratory judgment action brought by a liability insurer).

· Despite *Northbrook* and *Aetna*, district courts within the Sixth Circuit have recently split as to the impact of the direct action proviso on *Scott–Pontzer* declaratory judgment actions brought *by* insurers. *See Acuity v. McCulley*, 208 F.Supp.2d 860 (N.D.Ohio 2002) (Carr, J.) (imputing Ohio citizenship to insurer pursuant to § 1332(c) and dismissing for lack of diversity jurisdiction); *Fidelity and Guarantee Ins. Underwriters, Inc. v. Nocero*, No. 01–cv–397, 2001 WL 1792448, 2001 U.S. Dist. LEXIS 24020 (N.D.Ohio Dec. 13, 2001) (Gaughan, J.) (deciding not to apply direct action proviso to insurer's declaratory judgment

action for a myriad of reasons, including fact that action was commenced by, rather than against, the insurer). After carefully considering Northbrook, *Aetna*, and the facts of the instant action, this Court determines that the direct action proviso does not apply, and thus does not destroy diversity jurisdiction in the instant action. Both the United States Supreme Court and the Sixth Circuit have made clear that despite any resulting incongruity, § 1332(c) does not apply to actions commenced *by* liability insurers. A contrary result is in direct contravention of Northbrook, *Aetna*, and the plain language of § 1332(c).

The foregoing determination does not end the Court's inquiry, however, for the Court must still evaluate the relevant factors to determine whether to entertain Plaintiff's request for declaratory judgment. These factors are discussed below.

### C. *Declaratory Judgment Factors*

 Pursuant to the Declaratory Judgment Act, "[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). As noted by the Sixth Circuit, "[t]he Supreme Court has repeatedly emphasized the discretionary nature of the Act." *Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 276 (6th Cir.1990). Though the Sixth Circuit has recently altered the standard of appellate review of such actions,[3] the factors that a district court is to consider remain unchanged:

---

**2.** In a § 1332(c) direct action, an insurer's citizenship is that not only of its state(s) of incorporation and principle place of business, but also of the state of citizenship of the § 1332(c) "insured." Northern would be regarded as an Ohio citizen because Sauder, the § 1332(c) "insured" in the instant action, is an Ohio citizen. In the instant action, any dispute as to whether the § 1332(c) "insured"

in a *Scott–Pontzer* action means the named employer, the employee, or both, is merely academic because both Olmstead and Sauder are Ohio citizens; thus, it is Ohio citizenship that would be imputed to Northern.

**3.** *See Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964 (6th Cir.2000) (noting replacement of the de novo standard with the abuse of discretion

We apply the following general principles in determining whether a declaratory ruling is appropriate:

> The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. It follows that when neither of these results can be accomplished, the court should decline to render the declaration prayed. .

[* * *] We thus consider the following factors: (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Mercier*, 913 F.2d at 277.

With respect to factor (1), though a ruling might not settle the controversy, particularly if Northern's policy falls within the ambit of *Scott–Pontzer*, a ruling of no obligation certainly would dispose of the issue. Factor (2) clearly weighs in favor of entertaining the instant action. At least

with respect to liability, the judgment sought would certainly clarify Plaintiff's responsibility, if any, for payment to Olmstead under Sauder's UM/UIM coverage.

With respect to factors (3) and (4), Defendant's notice to Plaintiff of his intent to sue to recover UM/UIM benefits can hardly be said to have sparked a race to the courthouse. Though Defendant's action was filed only 2 weeks after the instant action, Plaintiff did not file until more than one year after receiving Defendant's notice of intent to sue.[4] Plaintiff therefore had an entire year to follow up on his demand letter and file suit in state court, if that was his preferred forum. Therefore, the circumstances present in other cases giving rise to concerns over procedural fencing and races to the courthouse are not at the forefront of the instant action. *See, e.g., NGS Am., Inc. v. Jefferson*, 218 F.3d 519, 522 (6th Cir.2000) (surveying cases).

As to factor (5), alternative remedies certainly do exist, such as a direct suit against the insurer, or a declaratory judgment action in state court. However, while it is tempting to funnel *Scott–Pontzer* actions to state court, it is not clear that a state court proceeding would be more effective. Federal courts are routinely called upon to decide matters pursuant to state law, and the body of *Scott–Pontzer* jurisprudence is quite well-developed despite the opinion's 1999 decisional date.

After careful consideration of the relevant factors and the specific facts of this case, the Court determines that it is appropriate to maintain this case for a ruling upon Plaintiff's request for declaratory judgment.[5]

---

standard in *Wilton v. Seven Falls Co.,* 515 U.S. 277, 289–90, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995)).

**4.** In October 2001, Northern allegedly received a demand letter indicating Defendant's intent to sue to recover UM/UIM benefits.

Northern did not file the instant suit until November 2002.

**5.** The Court notes that its determination is not a per se endorsement of *Scott–Pontzer* insurance companies filing declaratory judgment actions in cases that would not be removable to or otherwise sustainable in federal court.

### D. Motion to Stay

Based on the foregoing, and cognizant that the instant action was filed prior to Defendant's suit in state court, this Court finds no compelling basis on which to stay these proceedings.

## III. CONCLUSION

Based on the foregoing, the Court determines that it has subject matter jurisdiction to hear the instant action and that the declaratory judgment factors weigh in favor of maintaining the instant action. For these reasons, Defendant's Motion to Dismiss (Doc. No. 3) will be denied.

Each declaratory judgment action must be carefully scrutinized under the relevant factors to determine whether exercise of a court's discretion is warranted.